## ALBERT C. TAYLOR v. WILLIAM AND DANIEL COLEMAN.

Where the defendant opened an account with the plaintiff for merchandise, and at the same time obtained from defendant cash advances on his cotton crop, giving for said advances his receipts, promising to pay ten per cent. per annum interest thereon until the cotton should be sold, in a suit commenced after the account would have been barred if not held to be paid by credits for sales of defendant's cotton, it was held that the account must be held to have been so paid; but that plaintiff should not recover interest on the cash advances, after sales of defendant's cotton, except for the excess of such advances over the amount of the sales; and not for such excess over the balance of the proceeds of the sales after discharging the open account.

Where a planter gives to a commission merchant, a receipt for advances on his cotton crop, which it is understood the planter is to consign to the merchant for sale, and stipulates in such receipt to pay interest thereon at a certain rate until the cotton shall be sold, the planter is liable for the same rate of interest until paid, on any amount that the cotton sold falls short of the advances and interest.

In this case, which was an action on an account, submitted to the Court below without a jury, it was held, that the account was sufficiently proved.

Error from Colorado. Tried below before the Hon. James H. Bell.

Suit commenced Oct. 7th, 1856, by defendants in error against plaintiff in error, alleging an account from the 24th March, 1853, to the 12th April, 1855, against defendant, amounting to $250 93, which was exhibited as part of the petition; also advances of cash to defendant, $300 on the 24th March and $250 on the 22d April, 1853, on defendant's cotton crop, for which advances plaintiff exhibited defendant's receipts, signed by him, and promising to pay interest thereon at the rate of ten per cent. per annum until the cotton was sold. The first one read: "On my cotton crop; some 15 or 20 bales to be delivered to them for shipment in the course of a few weeks." The second one read: "On my present cotton crop." The petition alleged the aggregate of principal $800 93, "upon which said sum the defendant is entitled to a credit of $553 77, being proceeds of sale of defendant's cotton, which said sales were made 26th November, 1853, leaving a balance due

Taylor v. Coleman.

your petitioners of $267 16." Prayer for judgment "for the aforesaid sum of $267 16, with interest on the two receipts for cash advancements (added to this amount) from their date until day of      A. D. 18—," &c.

Before defendant answered, plaintiffs amended, alleging that defendant was indebted to them "in the sum of $391 10, balance due 22d October, 1856, as shown by account current hereto attached, marked A, and prayed to be taken as part of this petition;" "that there had been mutual accounts existing between the parties since the 26th of November, 1853; that plaintiffs sold defendant goods, wares and merchandise, and advanced him money, and, in return, defendant sent to plaintiffs his cotton for sale; and that, after appropriating enough of the amount of the proceeds of said sales as was sufficient to pay his open account, plaintiffs appropriated the remainder to the credit of defendant's written obligations for money advanced, a full statement of all which, together with the interest thereon accruing up to the 22d October, 1856, is fully set out in the annexed account."

Said account, marked A, charged defendant with merchandise, as per bill rendered, November 26th, 1853, $138 11, and same date charged defendant with $201 92, that day placed to his credit on the obligation for $300 cash advanced. Same date defendant was credited with the aggregate of said amounts, to wit: $340 03, net proceeds of fourteen bales of cotton, as per account of sales. On the 14th May, 1855, defendant is charged with merchandise, as per bill rendered, $112 82; (it will be observed that this and previous charge of merchandise make the $250 93, the amount of the account alleged in the original petition;) and same date charged defendant with $32 52, that day placed to his credit on the obligation for $300 cash advanced. Same date defendant is credited with the aggregate of said amounts, to wit: $145 34, as the proceeds of 2,836 pounds of cotton. On the 11th of June, 1855, defendant was credited with what was called "advance on sales of the above 2,836 pounds of cotton," $48 40, and charged with the same amount as credited on the $300 obligation. Then followed a statement of the account of payments and interest on the two cash obligations; on the debtor side of which defendant was charged with interest at ten per cent. per annum down to the 22d October, 1856; and on the credit side was credited with said payments, as above described, and interest on each from the date thereof, at ten per cent. per annum, until the said 22d October, 1856; leaving a balance due plaintiffs of $391 10.

It will be perceived that the difference in the amount of the balance claimed in the original and amended petitions was caused by the fact that in the former no interest was computed; and it will also be perceived that if it is admitted that plaintiffs were entitled first to payment of their open accounts out of the proceeds of the sales of the cotton of defendant, and to interest on the cash obligations at ten per cent. per annum until paid, then the said account marked A was correctly stated.

Defendant demurred, denied all and singular, and pleaded the statute of limitations. A jury was waived, and the cause submitted to the Court.

The statement of facts only showed that the charges against the defendant were correct, and the two cash obligations; there was no evidence as to the credit side. The evidence in proof of the account is stated in the Opinion. The Court gave judgment November 9th, 1857, for plaintiffs, for $432 17; and defendant prosecuted this writ of error.

*J. H. Robson*, for plaintiff in error. I. The rule of law is, that if there are several existing debts, the debtor has the right to apply a payment to any debt he may designate. If he fails to do so, the creditor may apply it to any debt he pleases. If neither the creditor nor debtor make any specific appropriation of the payment, the presumption is that the debts which are first in point of time are to be thereby discharged. (Story on Contracts, Sec. 878.) Even then, according to this last rule, the plaintiffs and defendant having failed at the time of the sale of the cotton to make any specific appropriation of the proceeds of the sale, the only item of the account which can be placed on an equality with the first written receipt, so far as the appropriation of payments is concerned, is the first item thereof, dated 24th March, 1853; and that and the items dated 21st April, 1853, on said account, are the only items thereof which would have precedence of the second receipt.

But this rule of law as to the appropriation of payments is only applicable in the absence of an express agreement between the creditor and debtor. The express language of both receipts is that the money received by the defendant, and loaned or advanced to him by the plaintiffs, is an advance on his cotton crop, and that the defendant is to pay ten per cent. interest per annum on the amount advanced, until the cotton is sold. What other

construction can be given to this language, but that out of the proceeds of the sale of defendant's cotton the cash advancements are to be paid?  What more specific appropriation of the $553$\frac{77}{100}$ received on the 26th November, 1853, could have been designated by the defendant and agreed to by the plaintiffs, than that which is designated in those written receipts?  And yet by their amended petition the plaintiffs for the first time apply the proceeds of the sale of the cotton to the extinguishment of the account, and then towards the payment of the cash advancements.

II.  The Court erred in overruling defendant's exceptions to the testimony of Bankhead, Royster and Moore.   All that portion of their testimony in relation to those items of the account which were in the handwriting of the plaintiffs, or either of them, was insufficient and inadmissible.   The suppletory oath of the plaintiff who made the entries was essential to the introduction of the testimony, and more especially when it was in evidence that the plaintiffs had regular clerks and book-keepers at the dates of all the items set forth on the account.   This point has been already settled by this Court, in the case of Townsend v. Coleman & Bro., decided at the Galveston Term, 1857.   The Court is also referred to the leading case of Price v. The Earl of Torrington, with the notes upon the same, where will be found a reference to all the authorities upon the subject. (1 Smith's Leading Cases, p. 349–372.)

III.  The Court erred in its ruling as to the statute of limitations, and the judgment of the Court was contrary to law and to the evidence.

The Court ruled that limitation had nothing to do with this cause, and, doubtless, the ruling of the Court was founded on the mistaken idea, that the plaintiffs had a right to appropriate the proceeds of the sale of defendant's cotton first to the extinguishment of the account.

IV.  The judgment of the Court was excessive.   The plaintiffs allege, in their amended petition, that the amount due them, principal and interest, on the 22d October, 1856, is $391 10. The arithmetical process by which they arrive at that precise sum, as being due upon that precise day, may be apparent to the Court by a reference to the exhibit attached to their amendment, although we confess our inability to solve its mysteries.   However, the judgment of the Court not only gives the plaintiffs the principal and interest which they demand, but compounds the

interest by allowing them at the rate of ten per cent. per annum on the $391 10 up to the rendition of the judgment.

*S. S. Munger*, for appellees.   I. The plea of limitation will not avail in this case ; because there was a mutual account current, consisting of credits and debits, coming down to a period less than two years next before the institution of suit. (Pridgen v. Hill, 12 Tex. R.)

II. The defendant in the Court below cannot object that the proceeds of the sales of his cotton were appropriated to the liquidation of his open account ; for he failed to make any appropriation himself of the payment, thereby leaving the whole matter open to the discretion of his creditors.   They had the undoubted right to make the appropriation themselves; which they did by paying the older debt, that is, the open account. (Matossy v. Frosh, 9 Tex. R.)

III. It is believed to be proper—under the rules of general law—to admit a merchant's account books as evidence, upon proof that the books produced are those containing the original entries of the account sued on; that the books are correctly kept ; that on or about the time the debt accrued there were dealings between the parties ; that the entries were cotemporaneous with the sale of the articles ; and that some or most of the items in question were delivered to the defendant.

HEMPHILL, CH. J. The defendant being indebted to the plaintiffs on open store account, and also for moneys advanced on his cotton, the receipts of the advances being acknowledged in writing, with a promise to pay interest at ten per cent. until the sale of the cotton, the first question is as to the application of the proceeds of the sales of the cotton. The general rule is, that the debtor, at the time of payment, has the right to apply it to which debt he pleases.  If he fail to appropriate it, the creditor can, with some exceptions, apply it at his election.  If both fail, it will be applied by the law, according to the equity and justice of the case. (9 Tex. R. 610 ; 16 Id. 200 ; 18 Id. 64 ; 2 Greenleaf Evidence, § 529 ; 1 Story, Eq. § 549b.)

The debtor having, at the time of the sales, made no specific designation of the proceeds, the plaintiffs were left to their election to apply the payment.   But this did not vest them with power to act capriciously, or to make such designation as would

unreasonably operate to the prejudice of the defendant. At the Civil Law, the creditor must regard himself as standing in the shoes of the debtor, and apply the payment to such debt as the debtor himself would have first discharged. (9 Cowen, 747 ; 2 Greenleaf, 500.) But without affirming the principle to this extent, it is the rule of the Common Law, that the creditor cannot make such application as would, under the circumstances, be inequitable and unjust to the debtor. (2 Greenleaf Ev. § 531, 531a ; 16 Tex. R. 200.)

There has been some doubt as to the time at which the creditor should exercise this right of appropriation. In Mills v. Fowkes, 5 Bingham, N. C. 455, recent cases were cited by counsel, in which it was substantially held, that the creditor must specify, and in a reasonable time, the debt which he proposes to discharge. (2 B. & Ald. 39 ; 2 B. & C. 65 ; 29 Eng. Com. Law, 24.) This seems a most reasonable doctrine. If the debtor lose his right of appropriation, unless exercised at the moment of payment, the creditor should act upon his right, if not immediately, at least within a reasonable time ; and not delay until, perhaps, there be a great change of circumstances, and especially where the law, on his failure, will do exact justice between the parties. But the rule, as at present established by the decisions, is otherwise. (5 Bing. N. C. 455 ; 4 Cranch, 317 ; Moss v. Anderson, 4 Iredell, Eq. R. 42.)

It may be doubted whether the plaintiffs made any application of the payment, until after the commencement of suit, when, on the authorities most favorable to the creditor, it would have been too late. The original petition shows its application in one mode, leaving a balance due on the whole indebtedness, of two hundred and sixty-seven dollars and seventy-six cents. In an amended petition, an account current is exhibited (the mysteries of which the learned counsel of plaintiff in error acknowledges his inability to solve,) which increases the balance to three hundred and ninety-one dollars and ten cents. This is quite a difference, and leaves the inference that this was not the original, but a new mode of making up the accounts.

But whether the application were made by the plaintiffs in due time or not, is not, in this case, of material consequence. It is evident from the receipts that the defendant agreed to pay interest on the advances, until the sales of the cotton. Now, although this be not such designation as would prevent the creditors from so applying the proceeds as to save them from the

loss of their debt on open account, by the statute of limitations, yet they cannot, in justice, require that the debtor should pay interest after the sales of the cotton; the agreement being, in effect, that he would pay such interest until then, but not after. He cannot reasonably be charged with interest, except on the balance of the advances, in excess of the amount of the sales. The justice of this case is, and would be so awarded, if the application were left to the law, that the debtor should not be exempted from the payment of the whole debt established by proof, but that he should not be compelled to pay interest in contravention of and beyond the meaning and intent of his agreement. Any other mode of ascription by the plaintiffs would be unjust, and cannot receive the sanction of the Courts.

The judgment takes for its basis the increased balance, as shown by the amended petition, and must be reformed as above directed.

The second question is as to the sufficiency of the proof of the account.

We are of opinion that the account was sufficiently proved. The original books of entries were produced, proven to be such by the salesman and bookkeeper, who had been clerk during the time the debt was contracted. He and another clerk proved that they kept correct books. There was abundant proof that the defendant had dealings with the house. The items in the handwriting of one of the plaintiffs, with the exception of one small amount, were for articles ordered by letters of defendant. The other articles were principally in the handwriting of the clerk, the witness Bankhead. The account was presented to defendant before suit. He made no objection, except that it was a little more than he expected, but he presumed it was all right. There was also proof by two other clerks. The plaintiffs also offered to prove the cash items, being for freight on defendant's cotton, which was refused by the Court, on the ground that they could not be proved by the books. But understanding, in the progress of the cause, that the plaintiffs meant to prove by the clerk who was a witness, that the freight was paid as charged in the account, judgment was given by the Court for the whole amount, including freight.

There was certainly no injustice in this proceeding. On the contrary, its operation was to save the plaintiffs from the injury which would have arisen from the mistake of the Court.

The account of plaintiffs was sufficiently proven; but there

being error in the application of the sales of the cotton, the judgment is reversed, and ordered to be reformed and rendered.

Reversed and reformed.