**SNYDER–BELL GROCERY CO. v. HAMILTON et ux. (No. 11206.)**

(Court of Civil Appeals of Texas. Fort Worth. June 13, 1925. Rehearing Denied Oct. 17, 1925.)

1. **Appeal and error ⚖⇒221, 932(2)—Excess of judgment presumed to be interest, but judgment not reformed where no question raised thereon.**

Where judgment appears to be for more than bill sued for but less than bill and interest prayed for, it will be presumed that addition thereto was for interest, but, where no question was raised as to amount, then Court of Civil Appeals will not reform judgment in that respect.

2. **Husband and wife ⚖⇒79, 152—Wife cannot bind herself or estate, ordinarily, by contract, except for necessaries.**

A wife cannot bind herself or her separate estate, ordinarily, by contract, except for necessaries furnished her and her children, or for benefit of her separate estate.

3. **Payment ⚖⇒39(4)—Partial payment on grocery account properly applied by creditor on part of bill chargeable to husband.**

Where groceries were charged to both husband and wife, and partial payments on bill therefor were made without request as to how they should be applied, creditor, having right to apply them on any part of bill due, could apply them on part of bill chargeable to husband as contradistinguished from part of bill for groceries furnished wife and her minor children as necessaries.

4. **Husband and wife ⚖⇒17—Wife under statute given sole management, control, and disposition of her separate property.**

Under Rev. St. art. 4621, as amended by Acts 33d Leg. (1913) c. 32 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4621), liability of separate estate of husband for debts contracted by wife, except for necessaries furnished wife and her children after marriage, is denied, and wife is given right of sole management, control, and disposition of her separate property.

5. **Husband and wife ⚖⇒230—Plea of coverture waived by failure to urge it.**

In action for groceries furnished husband and wife, wife's plea of coverture can be waived by failure to urge it.

6. **Husband and wife ⚖⇒230—Coverture taken advantage of, though not pleaded, where petition affirmatively shows that defendant was married woman.**

Requirement to plead coverture to make it available as defense is subject to exception

that coverture not pleaded may be taken advantage of, where plaintiff's pleadings affirmatively show that at time of accrual of action defendant was married woman.

7. **Husband and wife ⚖⇒232(3)—Evidence held sufficient to authorize verdict against wife for groceries furnished for herself and minor children.**

In action for balance due for groceries sold husband and wife, evidence showing that wife bought groceries from plaintiff for herself and two minor children for period of one year, and that minimum amount that three people could live on a month would be $25, *held* to authorize verdict against her for $300.

*On Appellees' Motion for Rehearing.*

8. **Appeal and error ⚖⇒173(2)—Question that creditor's election to apply payments on account to husband's debt only came too late cannot be first raised on appeal.**

In action against husband and wife for groceries furnished them, where there was no plea of payment by wife for any groceries used by her or her minor children, in absence of such pleading, and in absence of objection to testimony of plaintiff that he had credited payments made to part of account for groceries used and eaten by husband, adult children, and boarders, no question may be urged on appeal that election came too late.

9. **Payment ⚖⇒39(1)—Creditor may apply payment as he sees fit, where debtor makes no request for application thereof.**

Where debtor makes no request to creditor for application of payments, creditor may make application as he sees fit, appropriating money to earliest or latest obligation at his option.

10. **Payment ⚖⇒39(3)—Debt on which creditor applies general payment must be actual and existing one.**

While creditor may apply a general payment on a just and valid demand, whether correctness thereof be assented to or not, the debt must be an actual and existing one.

11. **Payment ⚖⇒39(1)—Generally creditor may apply payments to suit his interests, if application does not injure debtor or perpetrate fraud on him.**

In general, creditor may apply a payment to suit his own interests, if by such application he does not injure debtor or perpetrate a fraud on him.

12. **Husband and wife ⚖⇒83—Alleging husband's insolvency not necessary in order to bind wife for groceries eaten by her and minor children.**

It is not necessary to allege insolvency of husband in order to bind wife for groceries eaten by her and her minor children.

13. **Husband and wife ⚖⇒229(3)—Allegations that wife ordered groceries and they were furnished to her held sufficient to bind her.**

Allegations that wife ordered groceries, and they were furnished to her, *held* sufficient, in absence of exception directed thereto, to bind her.

---

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Action by the Snyder-Bell Grocery Company, a partnership, against John A. Hamilton and wife. Judgment for plaintiff against defendant named only, and plaintiff appeals. Judgment reformed, and, as reformed, affirmed.

A. H. Eaton, of Fort Worth, for appellant.
R. C. Armstrong, Jr., of Fort Worth, for appellees.

BUCK, J. Snyder-Bell Grocery Company, a partnership consisting of Harry Snyder and W. L. Bell, sued John A. Hamilton and wife for certain groceries and merchandise. They alleged that during the period from September 30, 1921, to October 17, 1923, they sold to the defendants groceries aggregating in price $1,474.94, and that the defendants made partial payments on the account to the amount of $1,111.20, leaving a balance unpaid of $363.74, for which they sued. It was alleged that the balance due on this account was for groceries which were necessaries, and that none of the credits applied by plaintiffs by reason of the partial payments had been applied to that part of the account which was for groceries furnished Mrs. Hamilton for the support of herself and children, but that said payments had been applied to that part of the account for which the defendant John A. Hamilton alone was liable.

[1] The cause was tried before a jury, and no question was raised as to the balance due or as to the prices charged for the groceries. Mrs. Hamilton testified that she received the groceries, and that they were satisfactory as to amount, quality, and price. Upon the motion of defendant, Mrs. Hamilton, the court instructed the jury to return a verdict in her favor, which the jury did. Judgment against John A. Hamilton was rendered for $373.74. The judgment appears to be for $10 more than the bill sued for, but $10 less than the bill and interest prayed for. We presume that the additional $10 is for interest. No question is raised as to the amount of the judgment, and we do not feel it our duty to attempt to reform the judgment in this respect.

The only question involved in this case is, Did the trial court err in peremptorily instructing the jury to find in favor of the defendant Mrs. John A. Hamilton?

[2] A wife cannot bind herself or her separate estate, ordinarily, by contract, except for necessaries furnished her and her children, or for the benefit of her separate estate.

[3] Harry Snyder testified: That he sold Mrs. Hamilton the groceries, and they were delivered to her at her house, and he personally sent her statements from time to time. That the account was charged to both Mr. and Mrs. Hamilton. That Mrs. Hamilton had two minor children who lived with her, and

276 S.W.—48

that the minimum amount of groceries that three people could live on a month would be $25. That the cost of groceries for a family of three, such as Mrs. Hamilton and her minor children, would vary, but that in his judgment $25 a month was the minimum cost. It is shown: That the Hamiltons had living with them a married daughter and a married son, and that Mrs. Hamilton also boarded some students. That partial payments on the grocery bills were made, without any request as to how they should be applied; that is, as to whether they should be applied on the groceries used and eaten by Mr. Hamilton and his adult children and the boarders, or applied on the groceries eaten by Mrs. Hamilton and the minor children. Under such circumstances, the plaintiffs would have the right to apply them on any part of the bill due, and they could apply them, as they claimed they did, on that part of the bill chargeable to Mr. Hamilton, as contradistinguished from the part for groceries furnished Mrs. Hamilton and her minor children as necessaries. The evidence of plaintiff shows that he called up Mrs. Hamilton every morning over the telephone and she ordered the groceries. Mrs. Hamilton testified that the order for groceries was given by her, but that sometimes her daughters and her husband did the ordering. The evidence shows that Mrs. Hamilton owns a piece of rental property, apparently subject to her debts. It is evidently for this reason that the plaintiff has appealed.

In the case of Menard v. Schneider (Tex. Civ. App.) 48 S. W. 761, groceries were furnished to a family, charged to the husband, and monthly statements were rendered to him. One of the plaintiff firm testified that they knew the husband was insolvent and did not extend him any credit. The orders were given to a solicitor, sometimes by the wife, sometimes by a daughter, and at times by the cook. The court said:

"In order to bind appellant or her property for the goods, it was necessary to show, in addition to the fact that they were necessaries, that she had contracted for them. Rev. St. 1895, art. 2970 [article 4624]. There was no evidence whatever to show a contract on the part of appellant [Mrs. Menard], either express or implied, for the purchase of the goods. Orders were given, sometimes by the wife, and sometimes by the daughter and cook. As the husband is charged with the support of his wife and children, these orders would be presumed to be given at his direction, and the goods furnished upon his credit and to him. There is nothing from which it can be inferred that the wife knew that they were being furnished on her own credit. She said or did nothing to support such an inference."

The evidence in the instant case shows that Mrs. Hamilton knew that the groceries purchased from plaintiff were charged to her and her husband jointly; that she ordered at least a large part thereof herself; that such

groceries were necessaries to the extent of $25 a month for the support of herself and two minor children. She testified:

"I have bought groceries from the Snyder-Bell Grocery Company. I understand the amount that I owe down there. I have often been presented with a statement for the amount. I think $387.74 is the correct amount —$374 or $384, I think, is about correct. I personally purchased these goods. With reference to how they were purchased, they were solicited by phone calls each morning, and the order was given, sometimes by Mr. Hamilton, sometimes by my daughter, and sometimes by the cook. I knew they were being charged to me and my husband. My husband knew that. He made no objection. My husband works at the mill, and I attend to the business affairs, part of them, such as the purchasing of the groceries and the payment of the bills; I attend to that while he is at work. I suppose that he authorized me to attend to that part of the business; that is, it was understood that I was attending to that part of the work. Then he would pay for the groceries, or I did; that is, we simply had the money in one bunch. * * * I have often received a statement of this account. I think statements have also been sent to my husband at the mill; we get our mail there. I never complained of them overcharging me. So far as I am concerned, the account is just and reasonable and honestly due. I lived there at the time these groceries were bought.

"I have two small children and two married children. They boarded with me. The little children did not board with me; the small children did not pay any board. They ate part of the groceries, and I ate part of them. During this time I bought a few groceries elsewhere, but I bought most of the groceries from Snyder-Bell. I paid most of the payments on this account, I paid the delivery boy. I made all of the payments that were made. I do not think I had any conversation with the delivery boy at the time I paid him. I just paid him and told him to apply it on the account. Afterwards I received statements showing the credits were made there; there is no dispute as to that. This account was extending over a year's time; I was living there all that time. My two minor children were living there and helped eat these groceries. I have a married daughter and a married son. They were there. I have four or five school boys that were boarding there all the time. They also stayed there and ate part of the groceries."

Harry S. Snyder testified:

"We have sold Mrs. Hamilton some groceries. Those that were sold to her, I feel safe in saying were delivered to her. I personally sent her statements from time to time. She never questioned the accuracy of the statements. I have sent statements to her husband, John A. Hamilton. With reference to how the account was charged and whether it was charged to both, I would say it was a natural understanding that both were responsible. Both of them did not promise to pay for them; my dealings were with Mrs. Hamilton. However, I have at regular intervals mailed Mr. Hamilton statements to his place of business, showing that the account was charged to him. He never did object to that. This Exhibit A attached to the plaintiff's petition is a correct statement of the amount due. At the end of the different months the bills were sent out. It is supposed to be correct. I sent out bills the 1st of each month and on some occasions on the 15th of each month.

"With reference to knowing who these groceries were to be consumed by, I will say it was generally understood it was the Hamilton family, and I also knew she had at different times a few boarders. With reference to what constituted her family, I will say that I had met Mrs. Hamilton and one of her married daughters, and two children, and I knew of her having a married son. She told me they were living there with her. We sent these groceries to the house where they were all living. * * *

"With reference to where I acquired that business out there and from whom, I will say that before I originally commenced selling Mrs. Hamilton she had been buying groceries from us purchased at the South Side Grocery; she had an account at the South Side Grocery when I purchased it and became the owner of it, and I just continued to sell her. I did not see Mr. Hamilton and have a talk with him about the account. I did not know him at that time. I met Mrs. Hamilton personally about a year after I commenced selling her, but I talked to her personally every morning. That was with reference to orders over the telephone and about the account."

In Trammell v. Neiman-Marcus Co. (Tex. Civ. App.) 179 S. W. 271, Neiman-Marcus Company sued W. T. Trammell and his former wife, Mrs. Fay Trammell, for dry goods purchased by Mrs. Trammell prior to the divorce. After disposing of the case as to W. T. Trammell, the court said:

"We will now consider the appeal of Fay Trammell. The question as to her is: Were the goods contracted for by her, and were they necessaries for herself? The evidence shows that she in person purchased the goods and had them charged. She admits in her pleadings that the goods were necessaries for her own use, and she testifies to the same effect. Having contracted for the goods in person, and she testifying they were necessaries for her own use, renders her personally liable for the value of the goods. Under the pleadings and evidence of Fay Trammell, there was no error in the court in instructing the jury to find against her."

In McKee v. Popular Dry Goods Co., 240 S. W. 567, the plaintiff sued W. A. McKee and his former wife for goods purchased by his wife prior to the divorce. The wife pleaded her coverture. The Court of Civil Appeals of the El Paso District said:

"The evidence showing that the goods were sold to the wife in person, and that they were necessaries and for her own use, and much of them for supplying her house, her separate property, renders her personally liable for their value. But such would not necessarily relieve the husband from liability either to the seller or to the wife, in the event she should be required to pay the seller. Trammell v Nei-

man-Marcus Co. (Tex. Civ. App.) 179 S. W. 271."

See Palmer v. Coghlan (Tex. Civ. App.) 55 S. W. 1122; Hild v. Hellman (Tex. Civ. App.) 90 S. W. 44.

In the last-cited case, the court said:

"The fact that she bought the goods and gave her note for the price thereof is sufficient to show that she contracted for them, in the absence of some evidence tending to show the contrary."

In Speer's Law of Marital Rights in Texas, p. 204, § 154, it is said:

"In order to hold the wife liable for necessaries furnished herself or children, the debt should be contracted by her personally, or by some one acting under her authority. Such seems to be the intention of our statute, and has been the annunciation of our courts. That the credit was extended to the wife, and not to the husband, will not relieve him from liability. Its only effect would be a possible charging of the wife according to the facts, not a release of him. But where, as it formerly was, the control of the wife's separate estate, all its fruits and revenues, and all her time and labor, belong to the husband, it is idle to speak of a dealer's extending credit to the wife, and looking alone to her for payment. It could only be under the most extraordinary circumstances that a purchase by her would not be binding upon him."

[4] By article 4621, Rev. Statutes, as amended in 1913 (Acts ·33d Leg. c. 32 [Vernon's Sayles' Ann. Civ. St. 1914, art. 4621]), the rights of the wife to manage and control her separate property were enlarged, and the liability of the separate estate of the husband for debts contracted by the wife, except for necessaries furnished the wife and her children after their marriage, is denied. The wife is given the right of the sole management, control, and disposition of her separate property, both real and personal.

[5-7] In the instant case no special plea of coverture was made by the wife. If such plea were available, it can be waived by a failure to urge it. But the requirement to plead coverture in order to make it available as a defense is subject to the exception that coverture may be taken advantage of though not pleaded, where the pleadings of plaintiff affirmatively show that at the time of the accrual of the cause of action the defendant was a married woman. We suppose that the pleadings of the plaintiff sufficiently show this to be a fact. But we hold that the evidence shows that the groceries, at least $25 a month thereof, were necessary to the support of Mrs. Hamilton and her two minor children. The evidence shows that Mrs. Hamilton bought groceries from plaintiff for a period of time extending from September 30, 1921, to September 30, 1922. Therefore we think that the judgment in favor of Mrs. Hamilton was error, and that judgment should have been rendered by the trial court against her, upon the uncontradicted evidence, and upon an instructed verdict against her instead of for her, for $300, with interest at the rate of 6 per cent. from the date of the judgment. The judgment will be so reformed, and, as reformed, will be affirmed, with costs of appeal taxed against Mrs. Hamilton.

Reformed and affirmed.

## On Appellees' Motion for Rehearing.

[8] Appellees suggest, in the oral argument of counsel, that plaintiff did not plead below, nor was there any evidence to sustain the contention, that plaintiff elected to apply the payments made by Mrs. Hamilton on the part of the account for groceries not used by Mrs. Hamilton and her minor children, and that such an election must be made by the creditor at a reasonable time after the receipt of the payments, and certainly before suit is filed. He cites Taylor v. Coleman, 20 Tex. 778.

Plaintiff, in his amended original petition, and the only one in the record, pleaded:

"That the balance due on this account is for goods, wares, and merchandise which plaintiffs sold defendants, being groceries, and same were necessaries which plaintiffs furnished defendants for food for Mrs. John A. Hamilton and children, with permission and knowledge of John A. Hamilton. That none of the credits on this account were applied by plaintiffs in payment for the groceries furnished Mrs. John A. Hamilton and children, but said credits were applied to that part of the account for which the defendant John A. Hamilton alone is liable. That the price charged is the reasonable market value of the said groceries at the time the same were sold by plaintiffs to defendants and delivered by plaintiffs to defendants."

Mr. Snyder, for the plaintiff, testified:

"We have sold Mrs. Hamilton some groceries. Those that were sold to her, I feel safe in saying were delivered to her. I personally sent her statements from time to time. She never questioned the accuracy of the statements. I have sent statements to her husband, John A. Hamilton. With reference to how the account was charged and whether it was charged to both, I would say it was a natural understanding that both were responsible. Both of them did not promise to pay for them; my dealings were with Mrs. Hamilton. However, I have at regular intervals mailed Mr. Hamilton statements to his place of business, showing that the account was charged to him. He never did object to that. This Exhibit A attached to the plaintiff's petition is a correct statement of the amount due. At the end of the different months the bills were sent out. It is supposed to be correct. I sent out bills the 1st of each month and on some occasions, on the 15th of each month.

"With reference to knowing who these groceries were to be consumed by, I will say it was generally understood it was the Hamilton family, and I also knew she had at different times a few boarders. With reference to what

constituted her family, I will say that I had met Mrs. Hamilton and one of her married daughters, and two children, and I knew of her having a married son. She told me they were living there with her. We sent these groceries to the house where they were all living. * * *

"This money that was sent in, there was nothing said about how it was to be credited at the time it was paid in. On receipt of the money I just generally credited the account the total sum of the payment, and it has been called to my attention, or rather I have been informed, that I had the privilege of crediting the account to Mr. Hamilton or Mrs. John Hamilton, and I exercised my privilege of crediting the account of John Hamilton. That is groceries that are necessaries, that is what I mean. I did not make any credit on the account of groceries that were necessary for Mrs. Hamilton and the children."

[9-11] There was no plea of payment by Mrs. Hamilton for any groceries used by her or her minor children and ordered by her. Therefore, in the absence of any such defensive plea, and in the absence of any objection to the testimony of Snyder to the effect that he had credited payments made to that part of the account which was for groceries eaten by Mr. Hamilton, the adult children, and the boarders, no question may now be made that the election came too late. Where the debtor makes no request to the creditor for the application of payments, the creditor may make the application as he may see fit. Nor are the dates of the obligations material, and he may appropriate the money to the earliest or latest one at his option. While a creditor may apply a general payment on a just and valid demand, whether the correctness thereof be assented to by the debtor or not, the debt must be an actual and existing one. 21 R. C. L. pp. 90, 91. In general, the creditor may apply a payment to suit his own interests, if by such application he does not injure the debtor or perpetrate a fraud on him. The early English decisions are conflicting as to the time when the creditor must appropriate or apply the payment. Ann. Cas. 1913E, 895. But to the extent that the later English cases have established the rule that the appropriation need not be made by the creditor at the time of payment, they are in harmony with nearly all of the American decisions. See 21 R. C. L. p. 92, § 96; Alexandria v. Patten, 4 Cranch, 317, 2 L. Ed. 633.

30 Cyc. p. 1238, § 4, says:

"By the rule of the civil law, the creditor was bound to make his appropriation at the time of the payment, but at common law the creditor is not compelled to exercise his right of application at the time the payment is made.

There is much conflict among the authorities, however, as to how long the right exists. Some decisions lay down the broad rule that the creditor's right of application is not limited in time. By other decisions the application must be before a controversy has arisen, while another line of cases holds that it may be before suit brought, and still others that it may be applied before verdict or judgment. It has also been held that the appropriation must be made within a reasonable time."

See Thatcher v. Tillory, 30 Tex. Civ. App. 327, 70 S. W. 782, and various other cases cited under note 22, p. 1239, 30 Cyc.

Under the circumstances shown, and under the pleadings, and the state of the record, we do not believe that plaintiff should be denied a recovery against Mrs. Hamilton, by reason of having made the application too late.

[12, 13] It is urged that there is no testimony to sustain the contention that Mrs. Hamilton personally contracted to pay for any part of the groceries she purchased, nor is there any allegation that Mr. Hamilton was insolvent at any time during which the goods were furnished. We do not think that it was necessary to allege the insolvency of Mr. Hamilton, in order to bind his wife for groceries eaten by her and her minor children. The petition does allege that Mrs. Hamilton ordered the goods, and they were furnished to her. We think such allegations are all that is necessary, in the absence of any exception directed thereto, to bind the wife. In Hawkes et ux. v. Robertson (Tex. Civ. App.) 40 S. W. 548, writ of error denied, the court said:

"It is alleged that the note was executed by her for necessaries and expenses that the statute makes her liable for. The note evidenced the debt, and there is nothing in the petition that indicates that the note was given for a pre-existing debt that might have been incurred by some person other than herself. The petition was sufficient to warrant the judgment and execution against her separate estate for such balance as might be due on the judgment after the application of the proceeds of the mortgaged property. This suit is brought under the statute, and not to charge her separate estate in equity for necessaries for the family, including her husband; and hence it was not necessary to allege that the husband was insolvent, and that there was no community estate liable for the debt."

See McFaddin v. Crumpler, 20 Tex. 375; Emerson v. Kneezell (Tex. Civ. App.) 62 S. W. 551; Von Carlowitz v. Bernstein, 28 Tex. Civ. App. 8, 66 S. W. 464, by this court.

The motion for rehearing is overruled.

DUNKLIN, J., not sitting.