### DROUGHT et al. v. STORY et al.†

(Court of Civil Appeals of Texas. San Antonio. Jan. 3, 1912. Rehearing Denied Jan. 31, 1912.)

1. HUSBAND AND WIFE (§ 273*) — COMMUNITY PROPERTY—RIGHTS OF SURVIVOR.

Where a husband qualified as community survivor by filing an inventory and appraisement of the common property under the act of August 26, 1856 (Laws 1856, c. 123), he acquired the right to exercise all the powers conferred until final partition, or until the heirs of the deceased wife proceeded, as authorized by statute, to terminate his powers, and his remarriage or the death of the only issue of the deceased wife would not terminate his rights; and all of such rights were expressly saved by the act of June 2, 1873 (Laws 1873, c. 97), relating to the rights of a survivor in community property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1074; Dec. Dig. § 273.*]

2. HUSBAND AND WIFE (§ 247*)—COMMUNITY PROPERTY — STATUTORY PROVISIONS — PROSPECTIVE EFFECT.

Gen. Laws 1876, c. 84, which re-enacted the provisions concerning the community sur-

vivor, including the requirement of bonds, and which by section 116 provided that where the wife died, the husband surviving, administration was unnecessary, except as to any separate estate of the wife, and the husband continued to have the same power of disposition over the community property which he possessed during the continuance of the marriage, but should return an inventory and to file a bond, etc., was prospective, dealing with procedure as to community estates, where death of one of the parties occurred after the act went into effect, or where one had previously died and no administration had been taken out, and hence did not affect the right of a surviving husband to manage, control, and dispose of such community property nor his administration for which he had qualified by filing an inventory under the Act of August 26, 1856 (Laws 1856, c. 123), but without giving bond, which rights had been expressly saved by the act of June 2, 1873 (Laws 1873, c. 97).

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 879, 886; Dec. Dig. § 247.*]

3. HUSBAND AND WIFE (§ 247*)—COMMUNITY PROPERTY—STATUTORY PROVISIONS—INCONSISTENCY.

Gen. Laws 1876, c. 84, which re-enacted the requirement that a community survivor should give bond, and repealed all laws in conflict therewith, was not inconsistent with or repugnant to the act of August 26, 1856 (Laws 1856, c. 123), under which a surviving husband qualified as a community survivor by filing an inventory without giving bond, and thereby became entitled to the right to control and dispose of such community property, and which rights were expressly saved by the act of June 2, 1873 (Laws 1873, c. 97), and hence did not affect the rights of such surviving husband, or the continuance of his administration.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 879, 886; Dec. Dig. § 247.*]

4. HUSBAND AND WIFE (§ 273*)—COMMUNITY PROPERTY—STATUTORY PROVISIONS—REVISION.

Rev. St. 1895, in view of the general provisions found at the conclusion of the revision, contain no provisions that affect the rights of a surviving husband in community property after he has qualified by inventory, etc., and acquired administration under the act of August 26, 1856 (Laws 1856, c. 123).

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

5. STATUTES (§ 263*) — CONSTRUCTION—RETROACTIVE OR PROSPECTIVE—EFFECT.

In the absence of constitutional restrictions, it is a general rule of construction that a statute shall have only a prospective operation, unless its terms show clearly a legislative intention that it shall have a retroactive effect.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 344; Dec. Dig. § 263.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by Russell Story, a minor, by next friend, and others, against Ethel T. Drought and husband. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

W. W. King and Denman, Franklin & McGown, for appellants. Webb & Goeth, for appellees.

JAMES, C. J. This action was brought by Russell Story, a minor, by next friend, and by Frances Story Rust, joined by her husband, J. B. Rust, against H. P. Drought and Ethel T. Drought, his wife, in trespass to try title, plaintiffs each claiming an undivided one-twelfth interest in two certain blocks of land, together with a strip of 20 varas in width between them, which was upon the maps an extension of Erie street in the city of San Antonio. The petition alleged that Mrs. Drought owns the other ten-twelfths and the prayer included partition. Defendants pleaded general denial, and not guilty, limitations, and improvements in good faith, and plaintiffs pleaded their minority. The case was submitted to the jury on special issues, and upon the verdict the court gave judgment for plaintiffs for one-sixth undivided interest in the property as described in the petition without the improvements thereon, and for defendant Ethel T. Drought for five-sixths of the property, together with the improvements thereon and decreeing that the property could be partitioned in kind; that one-twelfth be set apart in value without improvements to plaintiff Russell Story, likewise one-twelfth to plaintiff Mrs. Rust, and to Mrs. Drought the remaining five-sixths, together with all improvements and the improved lots, and directing that in making the partition five-sixths in value of the property without improvements, and, in addition thereto, all the improvements, shall be set apart to Mrs. Drought, and appointing commissioners. The appeal is from this decree.

The property in question was purchased by W. R. Story in 1865, it being community property of himself and his then wife, Eliza Story. Eliza died in 1868, leaving a son, Herff Story, who died intestate and without issue in 1891, leaving as his heirs his father W. R. Story and a half-sister, Mrs. Payton, a child by a former marriage of W. R. Story, and two half-sisters, the plaintiffs in this suit, these being children of a subsequent marriage of W. R. Story. In December, 1868, W. R. Story duly qualified as community survivor by filing an inventory and appraisement of the common property under the act of 1856 (Laws 1856, c. 123). He had charge of the property in controversy from that time, and on March 1, 1895, he and his then wife mortgaged it by deed of trust to Francis Smith. On April 7, 1900, they executed a conveyance of it for the consideration of $10,000 to H. P. Drought, who later conveyed it to his wife. It appears, also, that the half-sister of Herff Story, who was Mrs. Payton, conveyed to H. P. Drought, leaving plaintiffs as the ones open to claim an undivided one-sixth of the property under Herff Story.

The main and a decisive question in the case is whether or not W. R. Story had power

to dispose of in 1900 the community property of the marriage of himself and Eliza Story by reason of his said qualification as survivor in 1868. If he had the power at that time, plaintiffs are not entitled to claim.

The foregoing facts are all that are material to this question, for it appears that nothing was done by Story to acquire power of disposition over that community estate, except the fact of said qualification in 1868 and his continuous exercise of control over the same afterwards, without ever being proceeded against for an accounting or partition.

[1] W. R. Story duly qualified under the provisions of the act of 1856. He acquired the right to exercise all the powers that act gave him for an indefinite time and until final partition, or until the heirs of the deceased wife proceeded, under article 4650, Paschal's Digest, to terminate his powers. No partition or other proceedings were ever asked for. The statute in cases where the surviving wife filed the inventory and appraisement provided that her powers should terminate upon her marrying again, but no restriction of this sort was imposed on the husband, and it is clear that his powers would continue, until partition or said other proceedings by the heirs of the wife, indefinitely. One of the contentions of appellees is that the death of Herff Story, the only child of the particular marriage, in 1891, of itself would terminate Story's powers. We hold this did not have such effect.

In 1870 (Laws 1870, c. 81) the Legislature enacted a general law on the subject of the mode of procedure in matters of probate and in the repealing clause named the various prior acts on the subject, among them the act of March 20, 1848 (Laws 1848, c. 159), and the act of August 26, 1856 (Laws 1856, c. 123), and repealed them. This act, as did the act of 1876 (Laws 1876, c. 84), required bond of the survivor. We may assume in this opinion that the act of 1856, being repealed by name, was repealed for all purposes. On June 2, 1873 (Laws 1873, c. 97), the Legislature reenacted the above statute of 1870, but with proviso as follows: "Provided, that this section shall not apply to community property of estates where the surviving husband or wife, prior to the passage of the act to which this is an amendment, obtained the right to manage, control and dispose of said community property under and by virtue of the provisions of the act entitled an act supplementary to the act of March 13, 1848, entitled 'An act better defining the marital rights of parties,' approved August 26, 1856, and such surviving husband or wife shall manage, control and dispose of such community estate and make settlement and partition thereof, under and in accordance with the provisions of said act approved August 26, 1856, as though the same had not been repealed." The Legislature evidently conceived that a

mistake had been made in the sweeping repealing clause of the act of 1870 to the detriment of community administrations that had been taken out, and were in process of being administered by survivors without bond under the act of 1856, and by the above amendment of 1873 restored such administrations by survivors to the status they had prior to the statute of 1870. Story's administration was one of these, and it appears to be conceded, as it must be, that, when the later act of 1876 was passed, he was in full possession of the powers he originally acquired.

[2, 3] This brings us to the act of 1876 (Gen. Laws of 1876, p. 93), entitled "An act to regulate proceedings in the county court pertaining to the estates of deceased persons." This act re-enacted the provisions concerning the community survivor, including the requirement of giving bond, and its repealing clause is, "That all laws and parts of laws in conflict with the provisions of this act are hereby repealed." Appellees' contention is that by this statute the act of 1873 restoring the act of 1856 was repealed, as well as the act of 1856 itself, leaving no support for the continuance of Story's powers. We find ourselves unable to agree with the contention. It is true that all of the previous laws on the subject in conflict with the provisions of the act of 1876 were repealed; but was the continued existence of Story's administration in conflict with anything enacted in said statute? If not, the repealing clause did not affect it. There is nothing in said act of 1876 which refers to community administrations taken out under the act of 1856, and recognized and continued under the act of 1873. It is clear that the act of 1876 had no reference to such administration, and, when it provided in section 116, "Where the wife dies, her husband surviving, administration is unnecessary except as to any separate estate which may have belonged to her. The husband continues to have the same power of disposition over the community property which he possessed during the continuance of the marriage, but he shall be required to return an inventory and appraisement of all such property and to file a bond," etc.—it manifestly was providing for such administrations taken out after the passage of the act. It was a prospective enactment dealing with the subject of procedure in such cases after its passage, and dealt with community estates where death of one of the parties occurred after the act went into effect, or where one had previously died and no administration had been taken out. In this view of the act of 1876, was the continued existence of pending administrations by survivors under the previous laws inconsistent or in conflict with its provisions? We think not. The act applying to future administrations of that kind, there would be no conflict with its provisions in recognizing the

prior acts as in force, so far as they applied to the administrations that had been taken out under them. The acts would thus relate to different subjects, and could stand and operate together without any repugnancy to that extent. We may illustrate this by recurring to the conditions which were created by the Legislature after the act of 1873 was passed. The effect of that act was to allow the statute of 1870 to have effect in so far as to prescribe the rule for these community administrations originating under it, and at the same time to allow the statutes of 1856 to have full force in respect to administrations taken out under it without bond. This is a practical illustration, needing no further demonstration, that there is no repugnance or conflict in the operation of the statute of 1876 on this subject as enacted, and the operation at the same time of the statutes of 1856 and 1873 to the extent of supporting administrations granted under them. That this was the sense of the Legislature in passing the act of 1873 is clear. We therefore conclude that the powers of W. R. Story continued after 1876 as they were before. He disposed of the land in controversy by conveying it to H. P. Drought in 1900.

[4] In the meantime the Revised Statutes of 1895 were enacted, but by that revision there was no repeal which affected W. R. Story's pre-existing powers, in view of the general provisions at the close of said Revised Statutes. Being of opinion that W. R. Story's powers over the community property in question continued and were in force when he made conveyance thereof to Drought, we conclude that his deed passed title to all the property in question. And, as this view renders it unnecessary to discuss appellants' other assignments of error, we reverse the judgment of the district court and here render judgment for appellants.

We have not found it necessary to consider the question of the constitutional power of the Legislature to terminate or affect the existence of these community administrations committed to the control of survivors, being of opinion that by the acts of 1876 and the Revision of 1895 the Legislature did not attempt to do so, that said enactments were intended to be prospective in their operation, and that the continued existence of such administrations was not inconsistent with anything contemplated by and contained in said acts, and the acts of 1856 and 1873 were, to the extent of supporting them, not affected by any repealing clause of the later acts.

[5] We may, before concluding, refer to what is said in Mellinger v. City of Houston, 68 Tex. 42, 3 S. W. 251: "In the absence of constitutional restrictions upon the subject, it is almost universally accepted as a sound rule of construction that a statute shall have only a prospective opera-

tion, unless its terms show clearly a legislative intention that it shall have a retroactive effect."

Reversed and rendered.