**BALL et al. v. BANKERS LIFE CO.**

No. 13522.

Court of Civil Appeals of Texas.
Fort Worth.

March 12, 1937.

Rehearing Denied April 16, 1937.

Benson & Benson and Donald, Kearby & Donald, all of Bowie, for appellants.

Coker, Rhea & Vickrey and Mack L. Vickrey, all of Dallas, for appellee.

SPEER, Justice.

The record before us discloses that W. T. Ball and his wife, Louella Ball, lived in Montague county many years and jointly acquired 2,555.5 acres of land in that county. That Louella Ball died intestate on June 9, 1924, at which time the commun-

ity estate owed indebtedness aggregating $17,000 or more. That on July 17, 1925, W. T. Ball filed his application for community survivorship over the estate of himself and deceased wife, in which it was shown the existence of community debts and property; also that at the time of filing the application the children of applicant and his deceased wife, all named therein, were more than twenty-one years of age. Appraisers were appointed who, with the applicant, caused an inventory of the community property and list of claims to be made and returned to the court; thereafter, within proper time, W. T. Ball presented to the court, and procured its approval, his bond, conditioned as provided by law. The court entered its decree appointing the applicant community survivor, as provided by statute.

By stipulations in writing, agreed to by the parties, it was shown that at the death of Louella Ball she left surviving her, W. T. Ball, her husband, and the following named children, to wit: W. D. Ball, Sallie B. Harvey, George E. Simms, Edith Huff, and Etta Ball Brown. It also appears without dispute that at the time of the institution of this suit Sallie B. Harvey was a feme sole; Gary Simms was the husband of George E. Simms; that Stephen Huff was the husband of Edith Huff; that the daughter Etta Ball Brown had died intestate and that Charles S. Brown was her surviving husband; that Etta Ball Brown left surviving her the following named children: James T. Brown, David E. Brown, Ella Duke Brown, Charles Ball Brown, and Walter E. Brown; that Charles E. Brown and Walter E. Brown were minors and that David E. Brown was their legally appointed and acting guardian.

W. T. Ball died testate on February 5, 1929, leaving his last will and testament in which he named C. H. Boedeker and W. D. Ball as independent executors thereof. The will was duly admitted to probate, and W. D. Ball qualified as executor under the will without bond.

Bankers Life Company instituted this suit in the district court of Montague county against all of the named heirs of the said W. T. and Louella Ball, and B. F. Stoner, alleged to be a tenant in possession of the lands in controversy. There is no controversy between the parties on this point, and no necessity exists to repeat their names here, and we shall content ourselves to refer to all parties as plaintiff and defendants as they appear in the trial court.

Plaintiff's action was based on allegations to the effect that under the facts above mentioned by us, W. T. Ball, on October 15, 1927, acting in his own individual capacity and as community survivor of the community estate of himself and deceased wife, borrowed from plaintiff $33,000 and executed his note therefor, which note was to become due and payable on August 1, 1937, bearing interest from date at the rate of 6½ per cent. per annum, interest payable annually. That said note provided: "If any interest be not paid when due, the principal and all interest accrued thereon shall become due and collectable at once, without notice, at the option of the holder."

Further allegation was made that said note contained the usual 10 per cent. attorney's fee clause; that the obligation was secured by a deed of trust lien on the 2,555.5 acres of land belonging to the community estate, fully described in the petition. It is alleged that the deed of trust was executed by W. T. Ball for himself and as community survivor of himself and his deceased wife, Louella Ball.

Averments were made by plaintiff that on November 24, 1928, W. T. Ball, for himself and as community survivor, sold and conveyed certain of the land included in the deed of trust, receiving therefor the sum of $6,500; that said amount was paid to plaintiff and credited upon the principal of its said note.

It was further alleged by plaintiff that after the qualification of W. D. Ball as executor under the will of his father, W. T. Ball, the plaintiff, within the time required by law, proved and presented its claim against the estate of W. T. Ball, for the whole of said indebtedness, which was by the executor approved as a third-class claim and was duly entered upon the claim docket of the probate court, and timely approved by the judge thereof. That on July 7, 1932, an order was entered by the probate court of Montague county ordering the executor to sell at public auction in the manner and at the place provided by law, the undivided one-half interest of W. T. Ball, deceased, in all of said land then on hand, and that on August 2, 1932, said land was sold under said order for $6,000 to plaintiff, it

being the highest bidder thereat, and a deed was made to plaintiff by said executor and the purchase price of $6,000 was duly credited on its claim as of date August 27, 1932. A general allegation is made that plaintiff is the owner of the debt and lien; that there remained due thereon, on August 27, 1932, principal, interest, and attorneys' fees in the aggregate sum of $28,965.45; that defendants, though often requested to pay the same, had failed and refused. It will be necessary for us to refer to this allegation later in this opinion. Prayer was for the establishment of the entire debt and for foreclosure of the lien against the remaining half, or community interest of Louella Ball, deceased, as against all the defendants, and for general relief.

B. F. Stoner, the tenant, made no answer. The defendants, Louella Ball's heirs, answered with a general demurrer and general denial and by several special pleas, the latter consisting of allegations that the community survivorship by W. T. Ball in the matter of community estate between himself and wife was a nullity, in that the application showed upon its face that there was no minor child, or children, left by Louella Ball at the time of· her death. And that the obligation sued on by plaintiff was not given by W. T. Ball for community debts, or, at most, only in part for community obligations, and that sufficient payments had been made to discharge those owing by the community.

The case was tried to the court without a jury. Judgment was rendered establishing plaintiff's debt with a foreclosure of its lien on the interest claimed by defendants as heirs of Louella Ball. An appeal has been perfected to this court under proper assignments of error.

Propositions presented by defendants upon which the appeal is based may be properly discussed under five general heads, they being:

1. Chapter 27, title 54 (R.C.S. arts. 3664 to 3671), does not authorize a surviving spouse to qualify as community survivor when it is not made to appear that the deceased spouse left a minor child or children surviving her at the date of her death.

2. At the time of the death of Louella Ball, her one-half of the community property vested in her children (defendants) subject only to the then existing community debts, and W. T. Ball as community survivor had no authority to encumber the interest of defendants for any purpose other than to secure community debts.

3. The plaintiff could not split up its cause of action by first foreclosing as against the interest of W. T. Ball, the maker of the note, and later seek a foreclosure (as in this case) against the interest of defendants.

4. The pleadings of plaintiff show the suit was prematurely brought, in that the note sued on was due upon its face August 1, 1937. Suit was instituted June 18, 1933, upon an allegation that a failure to pay an installment of interest should, at the option of the holder, mature the principal, and that the petition disclosed that no installment of interest was due and unpaid at the date of the institution of the suit.

5. That the petition of plaintiff reveals that defendants are not liable for payment of the note sued on. Under such circumstances no suit could be maintained on the note until it was shown that the debt was due, presented to defendants for payment, and refused by them.

■ Reverting to the first proposition challenging the validity of the community administration by W. T. Ball because the application disclosed there was no minor child, or children, left surviving Louella Ball at the time of her death, we have concluded the proceedings cannot be condemned upon the grounds urged.

If the proceedings, for the reasons mentioned, were void, they could, of course, be thus attacked in this proceeding; but even if the proposition as advanced by defendants was sound, it cannot be said that the petition in the administration proceedings discloses affirmatively that none of the children were minors at the time Louella Ball died. It is there alleged that her death occurred on June 9, 1924. It is further shown by the application that defendants here constitute all of her surviving children and their descendants. With reference to their ages, this language was used: "All more than twenty-one years of age." The application was filed July 17, 1925. The allegation then is that at the time the application was filed they were all more than twenty-one years of age; the allegation does not attempt to state their ages at the time of the death of their mother.

This court held in the case of McCarthy v. Texas Company, 235 S.W. 679, that un-

der Vernon's Sayles' Ann.Civ.St. arts. 3592–3614 (now R.C.S. arts. 3661–3683), the surviving child, or children, left by the deceased spouse meant minors and that this should appear from the application as a prerequisite to a valid community administration. But the Supreme Court granted a writ of error in the case and it was dismissed by agreement of the parties before the latter court took further action in it. The Dallas Court of Civil Appeals, in the case of Morris v. Williams, 92 S.W.(2d) 541, declined to follow the McCarthy Case and held the contrary. The Supreme Court refused a writ of error in that case, and out of deference to these holdings we must overrule the assignments of error raising the question.

Defendants' propositions 3 to 8, inclusive, challenge, in one way or another, the right of W. T. Ball, the survivor, to create a valid lien on the half interest in the community property inherited by defendants from their mother, to secure debts other than those owing by the community.

R.C.S. art. 3669 provides that after application, appointment of appraisers, their return of inventory of property and list of claims, and the filing by applicant of bond in the amount and conditioned as provided by law, the survivor, "without any further action in the county court, shall have the right to control, manage and dispose of such community property as may seem for the best interest of the estate."

Under the provisions of the statutes relating to community administration, we think the quoted expression contained in article 3669 above is sufficient to authorize the survivor to create a valid lien on the community property for debts not owing by the estate at the time of the death of the deceased spouse. The term "right to control, manage and dispose" of the property would certainly include the lesser right to encumber it. The heirs will look to the bond in lieu of the property, should it not be in the hands of the survivor when distribution is made.

The question of a survivor's right to encumber the community estate for debts not owing by the community was before the Supreme Court in 1879, as appears in the case of Jordan's Ex'rs v. Imthurn, 51 Tex. 276. In that case the debt secured was one incurred by the survivor after the death of his wife and the funds were used by him in connection with his mercantile business. A lien was given by the community survivor on the community property to secure the money borrowed. The court said with respect to the lien: "The power of general disposition over the community, given by statute, would contain the lesser power to incumber it; and we do not think that there was error in so much of the judgment below as held the deed of trust valid to the extent to incumber the community property as such."

In Ostrom v. Arnold, 24 Tex.Civ.App. 192, 58 S.W. 630, writ of error refused, it was held that a deed of trust executed by a qualified community survivor, on lands belonging to the estate to secure the individual debts of the survivor, would be upheld by the courts.

■ We consider the rule well established in this state that, under the broad provisions of our statutes, authority is conferred upon a community survivor as such, to manage, control, and dispose of the community property in the same manner he could have done during the life time of the deceased wife. This principle carries with it the right to create a valid lien on the community property to secure even his personal obligations incurred after the death of the deceased spouse. Coleman v. Coleman (Tex.Civ. App.) 293 S.W. 695, writ of error refused; Drought v. Story (Tex.Civ.App.) 143 S.W. 361, writ refused; McGraw v. M. & P. Bank (Tex.Civ.App.) 34 S.W. (2d) 633, writ refused. This court held in the case of Tholl v. Speer (Tex.Civ. App.) 230 S.W. 453, a qualified community survivor was authorized to execute a valid oil and gas lease on community lands.

The cases of First National Bank v. Phillips (Tex.Civ.App.) 101 S.W.(2d) 319, and Haralson v. Wheeler (Tex.Civ. App.) 70 S.W.(2d) 748, cited by defendants in support of their contention, do not involve the rights of qualified community survivors and cannot be considered as construing the rights conferred under the statute. Likewise the case of Brown v. Adams (Tex.Civ.App.) 55 S.W. 761, also cited, is easily distinguished from the rule herein announced by us. There suit was on a note against a qualified survivor of a community estate in which it was alleged the debt was one for the benefit of the estate and it was sought to thus hold the community property liable for payment of the debt. No contractual lien was claimed. The case was disposed of upon

the theory that proof failed to show it was a community debt. The assignments and propositions under them raising the point are all overruled.

Propositions 11 and 12 are based on assignments of error which challenge the right of plaintiff to maintain this suit on the note when its maturity depends upon the acceleration provided therein for failure to pay any installment of interest when due. It is claimed the petition does not allege a failure to pay any installment of interest. It is further contended that payments admitted by the petition disclose that an application of such payments, in the manner required by law, affirmatively shows all interest was paid when the suit was instituted. We have classed these assignments under the fourth group above mentioned and will discuss them together.

We have already stated that the note was executed for $33,000, dated October 15, 1927. It was to become due August 1, 1937, bearing interest at the rate of 6½ per cent. per annum, payable annually on August 1st of each year, and provided that failure to pay interest when due should, at the option of the holder, mature the principal.

The allegations of maturity set out by plaintiff were as follows:

"The plaintiff is now the owner and holder of said promissory note and the claim filed thereon and said deed of trust lien and there remained due thereon on said 27th day of August, 1932, principal, interest and attorneys' fees in the aggregate sum of $28,965.45, and though often demanded so to do, the defendants herein have failed and refused to pay plaintiff said money or any part thereof, and the same is now due and unpaid and plaintiff has elected to exercise its option to declare the whole principal of said indebtedness to be immediately due and payable, and is entitled to have said debt established against the defendants and its deed of trust lien foreclosed upon the undivided one half interest in said land.

"That by reason of the failure of defendants to pay said note plaintiff has been compelled to place same in the hands of attorneys for collection and has placed the same in the hands of the undersigned attorneys and agreed to pay them the ten per cent attorneys' fees provided for in said note."

The petition, upon its face, shows that on November 28, 1928, certain of the land was sold by W. T. Ball for $6,500 and that amount was paid to plaintiff and applied on the principal by plaintiff. It is further alleged that on August 2, 1932, W. D. Ball, the executor under an order of court, sold the undivided one-half or community interest of W. T. Ball, deceased, in the lands for $6,000, to plaintiff and that amount was credited by plaintiff on its said claim.

■ There are no allegations by plaintiff that either W. T. Ball, at the time of making the $6,500 payment, or that W. D. Ball, at the time of making the $6,000 payment, agreed or consented that the credits should be applied to the principal obligation. They were both made at a time when interest had accrued, and in the absence of instructions by the payors for application of payments and an assent by them for the plaintiff to credit them where it chose, the law will apply them to accrued and past due interest. These payments more than paid all interest due at the time they were made. The last one is shown to have been made August 2, 1932, and no other installment of interest was due until August 1, 1933. The suit was instituted on June 18, 1933.

In discussing the application of payments made on a note it was said in Hampton v. Dean, 4 Tex. 455: "That a payment upon the note, in the absence of proof of an intention to make a different application of it, must be first applied to the extinguishment of the interest, is an elementary principle." This rule has been uniformly adhered to as is disclosed by Tooke v. Bonds, 29 Tex. 419; Wilson v. Ware (Tex.Civ.App.) 166 S.W. 705; J. I. Case Co. v. Laubhan (Tex.Civ.App.) 64 S.W.(2d) 1079.

■ The defendants filed their general demurrer to the sufficiency of plaintiff's petition; but it does not appear that the court acted thereon, but heard the case on the pleadings of the parties, and the testimony adduced unquestionably establishes the facts pleaded with reference to the date and maturity of the principal note as well as the credits in the amounts and at the dates pleaded. The case being tried to the court, no motion for new trial was necessary and the error is complained of for the first time on this appeal; but we believe it is available to de-

fendants here. Houston Gas & Fuel Co. v. Spradlin (Tex.Civ.App.) 55 S.W.(2d) 1086.

■ The allegations of plaintiff that the debt was due, and that so much as interest, principal, and attorneys' fees on the obligation was due and unpaid, were conclusions of the pleader and were not supported by allegations of facts bearing out the conclusions thus pleaded. Under such conditions they are insufficient to support a judgment rendered thereon when complained of by an adverse party.

■ It is said in Tex.Jur. vol. 33, p. 558, § 123: "As against a general demurrer, the pleader's conclusion will not be accepted in lieu of allegations of essential facts."

' It was held in Baker v. Hahn (Tex. Civ.App.) 161 S.W. 443, that the conclusions of the pleader in suit on a note, where no fact allegations were made to support the conclusions, a default judgment would not be permitted to stand.

■ In the case of Wall et al. v. Royal Indemnity Co. (Tex.Civ.App.) 299 S.W. 319, 321, this court had under consideration the sufficiency of a pleading as against a general demurrer, and what we yet conceive to be a correct doctrine was there announced in this language: "It is also a rule of pleading that the ultimate facts, as distinguished from evidence to prove them, necessary to show a cause of action, must be pleaded by certain and positive averments, and that the truth of mere legal conclusions without a pleading of necessary facts which warrant such conclusions is not admitted by the general demurrer. Baker v. Hahn (Tex.Civ.App.) 161 S.W. 443; Gray v. Osborne, 24 Tex. 157, 76 Am.Dec. 99; Sneed v. Moodie, 24 Tex. 159; St. Louis S. W. Ry. Co. v. Browne Grain Co. (Tex.Civ.App.) 166 S. W. 40; 21 R.C.L. § 9, p. 445, and § 5, p. 440, and authorities there cited."

The assignments of error raising this question are sustained, and other assignments mentioned in the third and fifth groups made by us, as well as some of those which we have not discussed in detail, will doubtless be cured by amendments before another trial, and no useful purpose can be served by going into them at this time.

For the reasons assigned, the judgment of the trial court is reversed and the cause remanded.

DUNKLIN, C. J., not sitting.

On Motion for Rehearing.

SPEER, Justice.

Plaintiff, Bankers Life Company, appellee here, has filed its motion for rehearing in this case, insisting that we erred in our original opinion when we concluded its pleadings were not sufficient to support the judgment rendered. It also insists that we erred in holding that, under the law and facts, the payment of the $6,000 in August, 1932, should have been applied to the liquidation of interest due.

We perhaps did not express all the reasons that might have been urged in support of the conclusions there reached by us, and because of the insistence of plaintiff's motion and the authorities cited we feel persuaded it is entitled to a fuller discussion of the subject.

■ The petition of plaintiff and the testimony offered in support of it, we believe, show beyond question that its action was prematurely brought; yet, because the pleadings were so drafted that they were somewhat uncertain, and for the further reason that they might reasonably be interpreted differently from the manner in which we construed them, we reversed the judgment and remanded the cause rather than render it. Article 1856, Rev.Civ.Statutes; Williams v. Safety Casualty Co. (Tex.Sup.) 102 S.W.(2d) 178.

The petition discloses there was only one debt or claim held by plaintiff. It consisted of a note and interest accruing thereon. That when the $6,000 payment was made by the executor to plaintiff, it was allowed as a credit on plaintiff's claim, the allegation being: "Said claim and promissory note have been duly credited with the sum of $6000.00 as of the 27th day of August, 1932."

There is no allegation that plaintiff ever applied the payment to the principal of the note to the exclusion of interest due thereon. Even if it had made such application, in the absence of an agreement between the parties to that effect, we do not think, under the rules of equity, it could be permitted to stand.

■ The rule is well settled in this state that if a debtor owes more than one obligation to a creditor, he may direct the application of any payment made, to either

of his obligations he may choose. If no designation is made by the debtor, then the creditor may apply the payment to such of the several debts as he may desire, provided he does so at a time and in a way to be fair, right, and equitable to the debtor. Parrish v. Haynes (C. C.A.) 62 F.(2d) 105; Stone v. Pettus, 47 Tex.Civ.App. 14, 103 S.W. 413; Bray v. Crain, 59 Tex. 649; Taylor v. Coleman, 20 Tex. 772; Snyder-Bell Grocery Co. v. Hamilton (Tex.Civ.App.) 276 S.W. 752; Bitter v. Bexar County (Tex.Com.App.) 11 S.W.(2d) 163.

The pleadings show the principal of the debt was due August 1, 1937, with interest maturing each year. The payment of $6,000 was shown to have been made on August 27, 1932, and the suit was instituted June 18, 1933. If plaintiff had applied the payment to interest due then, no other installment was due prior to the institution of the suit, and plaintiff was therefore not warranted in declaring the principal on the note due. If it had applied the payment to undue principal and left matured interest unpaid, thereby enabling itself to accelerate the maturity of the principal, it would have been unfair to the defendants and highly inequitable. "Equity looks on that as done which ought to be done." "Equity follows the law." Absent a showing that the payment was applied to the principal by the creditor at a time when it was fair and equitable to the defendants (and we scarcely can see how it could have been done in this case), the law will apply the payments to the interest due, as stated in our original opinion.

We have had no case called to our attention, nor have we been able to find one, which goes so far as to say that under any conditions could the creditor exercise an option to apply a payment to the principal of an unmatured note, and leave past-due interest unpaid, and when thus applied, declare the remainder of the principal due because of failure to pay the interest. It is so manifestly unjust and unreasonable we cannot perceive of it being done. The plaintiff in this case has not in so many words insisted upon such a right, but fair deductions from the pleadings strongly point in that direction. We cannot lend our aid to such a contention.

As early as 1876, in the case of Lowery v. Dickson, 1 White & W.Civ.Cas.Ct.App. § 497, the whole rule applicable to the principle here involved was tersely stated in this language: "A debtor who owes his creditor money on distinct accounts may direct his payments to be applied to either, as he pleases. If the debtor makes no such appropriation, the creditor may apply the money as he pleases. If neither party makes a specific appropriation of the money, the law will appropriate it as the justice and equity of the case may require. * * * But the creditor cannot prefer a debt not due to one due or overdue."

What we have said with reference to the application of the $6,000 payment in a great measure eliminates the necessity for us to further discuss plaintiff's contention that by fair deductions and reasonable intendments, its petition should be construed to mean that sufficient allegations were made that the debt sued on was due when the suit was instituted.

Plaintiff insists that we should have passed upon other assignments of error pointed out by defendants in their brief wherein the question of res adjudicata is raised. Because of the nature of defendants' pleadings below, we do not consider they were entitled to have that question determined either in the court below or here, and this prompted us to not discuss them upon original hearing. If and when the matter is raised by proper pleadings, those matters may be determined.

We see no reason to change our conclusions as expressed in the original opinion, and the motion for rehearing is overruled.

# MEMORANDUM DECISIONS