McFARLAND et al. v. BEATON et al.

No. 12534.

Court of Civil Appeals of Texas. Dallas.
Feb. 18, 1939.

Dissenting Opinion March 18, 1939.

Rehearing Denied March 25, 1939.

720

J. Frank Wilson and J. Lee Zumwalt, both of Dallas, for appellants.

Touchstone, Wight, Gormley & Price and Hamilton, Lipscomb, Wood & Swift, all of Dallas, for appellees.

BOND, Chief Justice.

This appeal presents error on the action of the trial court in sustaining a general demurrer to plaintiffs' petition, and, plaintiffs declining to amend, dismissing the suit.

Appellants, Lawton McFarland, et al., instituted this suit against Ralph A. Beaton, Newton G. Flippen, H. A. Hardie and B. E. Haughton, alleging in substance, pertinent here, that they were and are the children of J. V. McFarland and Georgia McFarland, and that, at the death of their father, they inherited an undivided one-half interest in certain designated real and personal property of the reasonable cash market value of $10,750, the property being the community of their father and mother. On October 3, 1921, at the instance of the defendant Ralph A. Beaton, their mother, Mrs. Georgia McFarland, made application to and was appointed by the Probate Court of Dallas County, Texas, community survivor of the estate of herself and her deceased husband, and posted a bond in the sum of $16,000, with defendants as sureties, conditioned, in terms of law, that "she will faithfully administer such community estate and pay over one-half of the surplus thereof, after the payment of the debts with which the whole of such property is properly chargeable to such person or persons as shall be entitled to receive the same".

Plaintiffs further allege that immediately after qualifying as such administratrix, Mrs. McFarland took possession of all the community property, and, thereafter, in a manner as shall presently be related, breached the conditions of said bond, in that she sold, mortgaged, exchanged and lost all of said community estate in a manner not authorized by law, and has failed to deliver to plaintiffs any part of the community property, to their damage in the sum of $10,750.

Plaintiffs allege that the defendant Ralph A. Beaton owned two certain lots in Dallas, Texas, and conceived the idea of inducing Mrs. McFarland to purchase said lots by sacrificing the community property as a payment therefor; and, to effectuate the deal, caused her to qualify as survivor administratrix, to enable her to sell and execute a deed to all the community property, to purchase the two lots from Beaton, which were incumbered with prior liens made by Beaton and wife to a loan company, in the sum of $12,000, and to incum-ber the lots further with an indemnity lien in favor of all the defendants, as security to their obligation in going on the community survivorship bond; and that on account of such liens the administratrix was unable to negotiate sales of the Beaton lots through relators, or otherwise, thus she suffered the loss of the entire community estate, to her damage in the sum of $8,500, and plaintiffs suffered loss of their entire interest in the community, to their damage in the sum of $10,750.

It was further alleged in the tenor following:

"Plaintiffs show that during all said transactions the defendants by reason of their said lien on said property refused to allow said realtors to make any deal out of which the plaintiffs could recover anything; that the defendants delayed said realtors and the plaintiffs, and refused to co-operate with them and made it practically impossible to trade said property at any price whatsoever; that as a direct and proximate result of the acts of the defendants, and to their damage in the value of said equity in the sum of $8,500.00 as hereinabove set out.

"Plaintiffs show to the court that the said Mrs. Georgia McFarland was prevented by the defendants from faithfully performing her duties as survivor of said community, and as such community administrator according to law, and that as a direct and proximate result of such failure, she and the defendants have failed to pay over to the plaintiffs one half of the proceeds and of the value of said property so owned as herein set out; that as a direct and proximate result of said failure, the plaintiffs have suffered damages in the sum of $10,750.00 which amount but for said failure would have been paid over to them at this time.

"Plaintiffs further show that Mrs. Georgia McFarland was prevented from faithfully performing her duties as such, and from realizing the aforesaid equity of $8,500.00, out of said land so purchased from the said defendant, Beaton, and the direct and proximate result of the acts of the defendants in preventing her from making said trades and deals as herein set out; that by reason thereof, the said Mrs. Georgia McFarland has been damaged in the sum of one half of said equity and these plaintiffs in the sum of the other half of said equity, equalling as aforesaid $8500.00.

"Plaintiffs show that they have received before the institution of this suit a transfer from the said Mrs. Georgia McFarland of all her said cause of action and damage by reason thereof.

"That by reason of the premises, the plaintiffs are entitled to judgment against the defendants, jointly and severally, on account of the failure of the said Mrs. Georgia McFarland to comply with the conditions of said bond, in the said sum of $10,750.00; that if they be mistaken in that, for any reason, then they are entitled to judgment against the defendants, jointly and severally, for $8500.00, the amount of the equity in said land, which the acts of the defendants prevented the said Mrs. Georgia McFarland from saving to herself and these plaintiffs and these plaintiffs are entitled to recover the said one half interest of said Mrs. Georgia McFarland, by reason of her transfer as aforesaid. That the said Mrs. Georgia McFarland, the principal in said community bond hereinbefore mentioned is insolvent, and for that reason is not made a party hereto".

We think plaintiffs' petition, as above related, clearly shows that the administratrix received and converted the entire community property in a manner not essentially necessary in the administration of the estate; that the administratrix sold, mortgaged, and wasted the entire community, so that nothing, at the time of filing this suit, remained on hand with which the administratrix could respond to the conditions of her bond; and that the administratrix never paid to plaintiffs the one-half of said community estate, or any part thereof, which they inherited from their father. It is evident from the petition that, had the estate or the proceeds of sale been retained and not lost in the manner alleged, plaintiffs would have had a right of accounting for all rents, revenues and proceeds derived therefrom, and an election to sue the administratrix to pay over to them one-half of the property, or the remaining surplus, after payment of debts with which the whole of such property may have been properly chargeable. But the petition shows that the entire estate and the proceeds of sale had been dissipated and lost, —not for the purpose of paying debts; thus the heirs had the right to treat the transaction as a conversion, a maladministration of the estate's affairs, and to sue the community survivor and the sureties on her bond for the value of their property. Hand v. Errington, et al., Tex.Com. App., 242 S.W. 722. Indeed, by virtue of the execution of the bond and qualifying as administratrix, the surviving partner of the marital union acquired the power to deal with the property as in the lifetime of her husband, Art. 3678, R.S.1925, chargeable only with the duty of faithful administration, and the payment of community debts and the surplus, if any, to the person or persons as shall be entitled to receive the same. Art. 3670. The bond stands in lieu of the property thus acquired, and takes the place of the property coming into the survivor's hands by virtue of the powers conferred on the surviving partner, and protects the children's interest in the community; so, if the estate is lost to them, other than for the payment of community debts, the children have a cause of action on the bond.

The condition of the bond is, not only that the administrator will "faithfully administer" the estate, but that she will also "pay over one-half the surplus thereof to the person or persons as shall be entitled thereto"; so, where the survivor sells the community and converts the proceeds of sale, or suffers the loss of the proceeds, other than for the purposes provided by statute, thereby becoming unable to pay over to the owners their proportionate part of the estate, the sureties are liable on the bond; and in order to relieve themselves from such liability, it must be shown that the person or persons entitled thereto, received it. 14 Tex.Jur. par. 783, p. 620; 31 C.J. par. 1368 p. 212; Brown v. Seaman, 65 Tex. 628; Ball v. Bankers Life Co., Tex.Civ.App., 103 S. W.2d 1111; McGraw et al. v. Merchants' & Planters' Nat. Bank of Sherman, Tex. Civ.App. 34 S.W.2d 633, writ refused; McGraw et al. v. Foxworth-Galbraith Lumber Co., Tex.Civ.App., 27 S.W.2d 554; Fidelity Union Ins. Co. et al. v. Hutchins et al., Tex.Civ.App., 111 S.W.2d 292, writ of error granted.

In Brown v. Seaman, supra, our Supreme Court said: "The right of the survivor in community to the absolute management of the common estate is secured by the statute, only in the event that a bond with sufficient sureties, and conditioned as the statute directs, is filed in the county court of the proper county. * * * In case the original bond was accepted,

and the survivor has acted under it, * * * the sureties upon the original bond are, of course, liable for his waste and mismanagement of the property. * * * The bond takes the place of the wasted property, and a cause of action upon it exists * * *." This is also the holding in Ball v. Bankers Life Co., supra.

We think, as against general demurrer, the petition in this case is sufficient to support any finding to the effect that the survivor converted the proceeds of sale of the community property for uses not provided by law; that the administratrix is unable to pay over to plaintiffs their interest in the community, or the proceeds of sale; and that she and the estate are wholly insolvent, thus, the sureties are liable and the suit maintainable by the children against the sureties, without making the principal on the bond a party to the suit.

The law does not require a foolish thing—the survivor being insolvent and all the community estate having been wasted and lost and nothing remaining to distribute to the heirs, no good purpose would be served in making the principal on the bond a party to the suit, and the law does not require it. Arts. 1987 and 6251. Plaintiffs' petition clearly traces all the community property into the hands of the survivor and shows distinctly the manner of its disposition and loss; that it was used for purposes not sanctioned by law, resulting in the survivor's not being able to respond to the demands of the owners thereof, therefore, the sureties are called upon to indemnify the heirs to the amount of their interest in the estate, without reference to the existence of any fraudulent or mala-fides acts or omissions on the part of the administratrix, subject, of course, to the right of the sureties to deduct any charges allowed by law.

Plaintiffs' suit further presents an attempt to charge the sureties with a tort and resulting damages to Mrs. Georgia McFarland in the sum of $8,500, which had been transferred to plaintiffs. Mrs. McFarland is alleged to have owned a one-half interest in the community property when she purchased the two lots from Beaton, thus she became the absolute owner of a one-half interest therein, and, as the owner, she had the right to bind her interest in the property by the indemnity agreement entered into with her sureties. The giving of such indemnity security was in no way a devastavit, nor is it alleged culpable.

Insofar as Mrs. McFarland's one-half interest in the acquired property is concerned, and, as well, the equitable right of the children therein, the sureties had the right to refuse its release from the indemnity lien, and any damage resulting to Mrs. McFarland or the community estate on account thereof could not render the sureties liable under any finding of a jury or court. No doubt, the execution of the indemnity lien frustrated the sale of the property purchased by Mrs. McFarland with community funds, but since she had the legal right to give such lien, any damage resulting to her or the estate would be damnum absque juria. Therefore, plaintiffs' attempt to state an independent cause of action, in their alternate plea for damages flowing to Mrs. McFarland, was subject to a general demurrer, and, perhaps, to special exceptions as bearing on plaintiffs' separate and independent suit on the bond.

In the case of Ball v. Bankers Life Co., supra, the contention was there made, as here alleged, that the survivor had no authority to incumber the community property, especially the interest of the children, for purposes other than to secure community debts. The Fort Worth Court of Appeals says [103 S.W.2d 1114]: "R.C.S. art. 3669 provides that after application, appointment of appraisers, their return of inventory of property and list of claims, and the filing by applicant of bond in the amount and conditioned as provided by law, the survivor, 'without any further action in the county court, shall have the right to control, manage and dispose of such community property as may seem for the best interest of the estate.' Under the provisions of the statutes relating to community administration, we think the quoted expression contained in article 3669 above is sufficient to authorize the survivor to create a valid lien on the community property for debts not owing by the estate at the time of the death of the deceased spouse. The term 'right to control, manage and dispose' of the property would certainly include the lesser right to encumber it. The heirs will look to the bond in lieu of the property, should it not be in the hands of the survivor when distribution is made".

On cognate question, citing: Jordan's Executors v. Imthurn et al., 51 Tex. 276; Ostrom v. Arnold, 24 Tex.Civ.App. 192,

58 S.W. 630; Coleman et al. v. Coleman et al., Tex.Civ.App., 293 S.W. 695, writ refused; Drought et al. v. Story et al., Tex.Civ.App., 143 S.W. 361, writ refused; McGraw et al. v. Merchants' & Planters' Nat. Bank of Sherman, Tex.Civ.App., 34 S.W.2d 633, writ refused; Tholl et al. v. Speer et al., Tex.Civ.App., 230 S.W. 453.

Plaintiffs' petition not being sufficient to allege damages founded in tort against the sureties, appellees' plea of misjoinder of causes was not available as to warrant the court to dismiss the suit on the bond. Wherefore, for the reasons stated, the judgment of the trial court is reversed and the cause remanded for further proceedings, consistent herewith.

Reversed and remanded.

YOUNG, Justice (dissenting).

I must respectfully enter my dissent to the majority opinion, holding generally that (1) a sale, exchange, or disposition of the estate by a community survivor, other than for the payment of debts, is a maladministration which the heirs can treat as a conversion, with a resultant right to sue the sureties for the value of their one-half interest. (2) I further dissent from the majority findings that the petition alleged the community survivor, Mrs. McFarland, had "lost all of said community estate in a manner not authorized by law"; that she "converted the entire community property in a manner not essentially necessary in the administration of the estate"; "wasted the entire community"; "that the entire estate and the proceeds of sale had been dissipated and lost" and "used for purposes not sanctioned by law"; nor do I find any pleadings that charge the survivor as having converted any proceeds of sale to uses not provided for by law.

A careful reading of the petition discloses no allegations whatsoever that their mother Mrs. McFarland, sua sponte breached the obligations of her bond, i. e., that she unfaithfully administered the community estate, or failed to fully account for the disposition of the property in her hands as statutory survivor. On the other hand, plaintiffs (the heirs) themselves, in their petition, render a full and complete accounting of the mother's administration under the terms of Art. 3670, R.S., revealing every transaction involved in the care and disposition of all property that might now be available for delivery to such heirs, had it not been for "unavoidable losses".

The two points above referred to can be made clearer by further examination of the petition, which, in allegations, is neither lengthy nor difficult of construction. It states that the purchase of the Beaton property was for a recited consideration of $1,500 cash, the balance of the purchase price being the realty and other avails of the original community estate; together with the assumption by Mrs. McFarland, as survivor, of a first lien indebtedness owned by a building and loan association. The petition then alleged that simultaneously with said sale or exchange, the mother, as survivor, made a written agreement with defendant Beaton, granting a lien upon the newly acquired real estate and premises, conditioned that she would indemnify defendants against loss by reason of their suretyship on her bond as survivor; that the statute contemplated a survivor's bond to be free of lien or hypothecation, being additional security to plaintiffs as heirs; that the sureties violated the law by requiring this indemnity, encumbering, as it did, the community estate, and "as a direct and proximate result thereof the plaintiffs were injured as hereinafter set forth". (Italics mine) The petition continued by stating that in the year 1930, there was a balance due of about $3,900 on the property previously purchased from defendant Beaton in 1921, and it became necessary to dispose of same; that after listing it for sale, a deal was closed for other property of equal equity; that the indemnity lien of defendants appeared in the title to the property owned by the community estate, and defendants refused to release it, whereupon such deal was lost to plaintiffs. A later deal similarly failed of consummation, as plaintiffs allege, and the mother—community survivor—thereafter, to avoid a foreclosure, was compelled to convey the property for a second lien note of $2,000, which was placed with defendants in lieu of the indemnity lien on the estate (the former Beaton realty), but said last-acquired equity was, in turn, lost through foreclosure; plaintiffs and their said mother, as survivor, finally losing everything of value, growing out of the initial transaction with defendant Beaton. The final averments of plaintiff's petition were that, by reason of the aforesaid indemnity lien and the acts of the defendants in refusing a release, it was impossible

to trade the property, to their damage in the sum of $8,500; that defendants further prevented said Mrs. McFarland from faithfully performing her duties as survivor, resulting in her failure to pay over to plaintiffs the one-half value of the property owned by them, in the sum of $10,750.

It should here be noted that there was no pleading whatever that the Beaton property was not of equal value to the original community realty given in exchange; or that such deal was not for the best interest of the estate; or was for the personal benefit of the mother—no charges of a want of discretion or a failure of ordinary care and prudence in the transaction. On the other hand, I find from the petition a state of rest and acquiescence in the estate's affairs for nine years when the final dispositions by the survivor occurred; and under what circumstances? In 1930, the first year of the depression, conditions were faced by Mrs. McFarland apparently beyond her control in being unable to pay the mortgage balance after threat of foreclosure by third parties; and her every effort to save the property during such times proving fruitless, the same was lost through foreclosure as already described. The pleadings in their entirety, reciting, as they do, the complete history of Mrs. McFarland's stewardship, charge her with no bad faith, fraud, or maladministration; on the other hand, the allegations therein simply lead, step by step, up to the refusal of the defendants to release the indemnity bond, whereby the mother was prevented (nine years after the original exchange) in making further advantageous exchanges of the estate. It is on this last alleged tort action —refusal of defendants to release the indemnity bond—that plaintiffs' attorneys have pitched their battle, and they attack such agreement of indemnity as being against public policy, unlawful, and void. The majority opinion correctly holds that the execution by Mrs. McFarland of the lien to defendants, just mentioned, was a lawful act, and in no sense a devastavit, or wrongful. It is uniformly held that the power of absolute management and disposition, under Articles 3667–3669, R.S., includes the lesser right to mortgage or encumber. See McGraw et al. v. Merchants' & Planters' Nat. Bank, Tex.Civ.App., 34 S.W.2d 633, and authorities there cited. So, in my judgment, the majority opinion entirely disposed of plaintiffs' appeal, when, referring to the community survivor, it holds:

"* * * she had the right to bind her interest in the property by the indemnity agreement entered into with her sureties. The giving of such indemnity security was in no way a devastavit, nor is it alleged culpable".

But the majority have further held that the petition was sufficient against general demurrer, on the ground that it alleged a conversion by Mrs. McFarland. I repeat, there is lacking in this petition any allegation or inference that, outside of her signing the indemnity agreement, which was lawful but which prevented later sales, the community survivor in anywise breached either of the two obligations of her bond, (1) to faithfully administer the estate; and (2) to account for and pay over one-half of the surplus of the estate, after payment of debts with which the whole of the property was properly chargeable. Arts. 3667–3670, R.S. If I be correct in this, the only remaining allegations on which plaintiffs could have pitched liability was in their assertion of the aforesaid tort action, which the majority holds is untenable; as I find no issuable facts alleged on which to base a breach by the principal (the survivor) of above elements of statutory liability on her bond.

Just what acts of the community survivor are actually plead that are thus held to be conversions? The only transfers by her were for the Beaton property in 1921, and the sale of the latter premises in 1930, after threat of foreclosure, for a second lien note, which, in turn, succumbed to previous liens. The sale to Beaton was a lawful transaction, there being no hint of bad faith or fraud; the conclusive inference obtaining that Mrs. McFarland was exercising her discretion in the matter and for the best interest of the estate. Her judgment in making the purchase seems to have had the entire approval of plaintiffs during the ensuing nine years. But, aside from this, certainly, since Brunson et al. v. Yount-Lee Oil Co., 122 Tex. 237, 56 S.W.2d 1073, a community survivor may dispose of the estate, regardless of the existence of debts. No conversion could have possibly resulted from a fair exchange of the community, as a conversion cannot spring from the exercise of a legal right. 65 C.J. p. 11; Ashbrook v. Hammer, 106 S.W.2d 776. As to the 1930 sale of the Beaton property and loss of the proceeds therefrom through foreclosure, the statute (art. 3670) plainly credits

the survivor with unavoidable losses. That losses through foreclosure during the course of the late depression are not matters for which a survivor is legally chargeable, is pointedly emphasized and held in Moreman v. Roberson, Tex.Civ.App., 76 S.W.2d 223.

It is therefore my conclusion, as a matter of law, that neither plaintiffs' allegations nor do the actual facts disclose any waste, dissipation, or use of property not sanctioned by law, such as would result in a conversion and a consequent liability against defendant bondsmen. Certainly there was no culpability in exchanging the property other than for the payment of debts. The case of Hand v. Errington, Tex.Com.App., 242 S.W. 722, cited in the majority opinion, did not involve a statutory proceeding at all, but was a community survivorship without bond, the suit being against the surviving father under a preceding article of the statutes. None of the other cases cited in the majority opinion are authority for the conclusions of law there reached under the facts of this record. The principle announced in the prevailing opinion would make the survivor's bond a financial guarantee against all losses in proceedings of this sort, regardless of statutory limitations.

The judgment of the trial court on the general demurrer was correct, and, therefore, this cause should be affirmed.

## On Motion for Rehearing.

BOND, Chief Justice.

The predominating purpose of the statute relative to appointment of community administrator is to allow the surviving partner of the marital union to continue the control, management, and disposition of the community property, pay the community debts, and then disburse the remainder to persons entitled to deceased's interest; and to prevent administration and guardianship over the estate, and distribution thereof within twelve months after filing of bond. There is no question that, after the survivor has complied with the law governing her qualifications, including the filing of bond, she is empowered not only to control and manage, but also to dispose of such community property, including the homestead of herself and her deceased spouse. Brunson et al. v. Yount-Lee Oil Co. et al., 122 Tex. 237, 56 S.W. 2d 1073; Morris v. Williams et al., Tex.

Civ.App., 92 S.W.2d 541, Writ of Error denied.

However, when the administrator disposes of the community interest belonging to the deceased, other than for purposes for which the property is legally chargeable, the bond stands in lieu of the estate belonging to the child or children of the deceased, conditioned that it will be forthcoming when partition and distribution is demanded. The disposition of community property for purposes of satisfying community debts, in the absence of unfaithful administration in that respect by the survivor, attaches no liability whatever to the bond, the survivor merely carrying out the trust imposed by statute. A survivor is empowered to sell community property to pay community debts without the necessity of administration, thus the qualifications add nothing in that respect to the power already possessed by the survivor, except to attach liability on the condition of the bond—that the survivor shall faithfully administer that trust. But where the disposition of the community estate is made, as alleged in appellants' petition, in trades and speculations—not for the purposes for which the property was chargeable—the heirs have a right to treat such transaction as a conversion, and liability attaches to the bond for any failure to "pay over one-half of the surplus thereof after the payment of debts with which the whole of such property is properly chargeable", to those entitled thereto. The question of good faith of the survivor in the disposition of the deceased's property does not enter into the liability on the bond, when the property is disposed of, other than for the purposes of the administration. If such was not the case, the children of the deceased spouse would be at the mercy of the survivor, without any protection for the forthcoming of their estate. The survivor could sell the property, either for cash or trade, and not account for the proceeds, on the ground that disposition of the property was made in good faith. "Good faith" does not mean freedom to do with the estate as the survivor may choose, or reasonable grounds to believe that the disposition of her trust was legal, or honest intention to abstain from taking advantage of another, but it is the control, management, and disposition of the trust estate for the purposes, sanctioned by the statute, in administration of the estate, and to protect the cestui que trust, on demand for

partition and distribution. The sureties on the bond cannot escape liability if the surplus of the estate, after payment of debts with which the whole of such property is properly chargeable, is not forthcoming.

Appellants' petition alleges in detail a complete accounting of the loss and disposition of the deceased's estate, through contracts and trade manipulations between the survivor and appellee Beaton and others, and for purposes other than the payment of debts; thus, except as such devastavit may bear on the issue of conversion and the insolvency of the principal on the bond, appellants' suit sounded in tort, as an alternative independent cause of action for damages, was subject to defendant's special exceptions, presenting misjoinder of causes; but the exclusion of such cause for damages did not authorize the trial court to dismiss appellants' suit on the statutory contract—the survivor's bond.

Appellees' motions for rehearing are overruled.

YOUNG, J., dissents.